ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
DayDanyon Corporation ) ASBCA Nos. 57611, 57681, 57717
)
Under Contract No. SPM8ED-09-D-0001 )

APPEARANCE FOR THE APPELLANT: Mr. Joseph S. Jankowski
President

APPEARANCES FOR THE GOVERNMENT: Daniel K. Poling, Esq.
DLA Chief Trial Attorney
Joseph R. Weidenburner, Esq.
Assistant Counsel
Kristin K. Bray, Esq.
Assistant Trial Attorney
DLA Troop Support
Philadelphia, PA

OPINION BY ADMINISTRATIVE JUDGE JAMES
ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

These appeals arise from the DLA Troop Support (DLATS) contracting
officer's (CO) decisions which relate to DayDanyon Corporation's (DayDanyon) 6 April
2011, $720,700 claim (ASBCA No. 57611), appellant's claim dated 18 May 2011
(ASBCA No. 57717), and the government's claim of 20 April 2011 which terminated the
contract and its Delivery Order Nos. 0002 and 0003 for default (ASBCA No. 57681).
The Board has jurisdiction of the appeals under the Contract Disputes Act of 1978
(CDA), 41 U.S.C. §§ 7101-7109. On 1 November 2013, the government moved for
summary judgment on the three appeals. On 12 November 2013, appellant moved for
summary judgment on ASBCA Nos. 57611 and 57717. On 27 November 2013, the
government responded to appellant's motion. Appellant opposed respondent's motion on
6 December 2013.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 23 April 2009, the Defense Supply Center Philadelphia, whose name was
changed to DLA Troop Support, awarded Contract No. SPM8ED-09-D-0001 (the
contract) to DayDanyon for Collapsible Joint Modular Intermodal Containers (JMIC)
(R4, tab 4 at 1-2 of 21).

2. The contract had four contract line item numbers (CLINs). CLINs 0001-0003 each stated an estimated quantity of 500 JMICs. CLIN 0001 JMICs were to be painted green, CLIN 0002 tan, and CLIN 0003 not painted. CLIN 9906 was for first article test. (R4, tab 4 at 1-3 of 21, 12 of 21)

3. The contract stated:

> This is a[n] Indefinite Quantity Contract. Orders may be issued on this contract for a period of TWO YEARS.
>
> ....
>
> First Article Test quantities of 2 each are due to the government test facility...on or before 150 days after date of award....
>
> After First Article Test approval, the required delivery for production quantities under this contract is 120 days after the date of the resulting delivery orders.
>
> The Guaranteed Minimum is a total of 500 containers, whether placed for a single CLIN, or combination of CLINS that collectively total 500 containers. The guaranteed minimum is 500 containers per year. Since this is a two year base contract the minimum quantity is multiplied by 2.

(R4, tab 4 at 2 of 21)

4. The contract incorporated, *inter alia*, the FAR 52.209-4, FIRST ARTICLE APPROVAL – GOVERNMENT TESTING (SEP 1989); FAR 52.216-18, ORDERING (OCT 1995); FAR 52.216-19, ORDER LIMITATIONS (OCT 1995); FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995); FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004); and FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) clauses (R4, tab 4 at 16-17 of 21, 21 of 21).

5. As relevant to these disputes: (a) the FAR 52.216-18, ORDERING (OCT 1995) clause provided in pertinent part:

> (a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued –

2

FROM: DATE OF CONTRACT AWARD

THROUGH: TWO (2) YEARS

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

and (b) the FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995) clause provided:

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided*, that the Contractor shall not be required to make any deliveries under this contract after Two Years[.]

(R4, tab 4 at 16-17 of 21) The record contains no evidence that DayDanyon sought from the CO clarification of the term "Two Years" in the above-quoted contract provisions.

6. On 4 June 2009, DLATS issued a Stop-Work Order on the contract. Bilateral Contract Modification No. P00001, executed on 2 July 2009, authorized resumption of contract work. (R4, tab 11 at 1-2 of 4)

7. On 16 December 2009, DayDanyon shipped two JMICs for government first article testing (R4, tab 34 at 1), with respect to which the test center found 27 major and 15 minor defects as reported on 13 January 2010 (R4, tab 38 at 1-8).

8. On 3 March 2010, DayDanyon submitted two JMICs, with respect to which the test center found 2 major and 5 minor defects as reported on 30 March 2010 (R4, tab 43 at 1-9).

9. DLATS' 6 April 2010 letter to DayDanyon noted conditional acceptance of the first article, provided that DayDanyon submit a corrective action plan addressing such deficiencies, which plan DayDanyon submitted on or about 7 April 2010 and DLATS approved on or about 9 April 2010 (R4, tabs 46, 47, 49). DLATS authorized DayDanyon to begin production on 29 April 2010 (R4, tab 51).

10. On 3 May 2010, DLATS issued Delivery Order No. 0002 (DO 2) for 100 units NSN - 5795 (tan), and Delivery Order No. 0003 (DO 3) for 400 units NSN - 5311 (unpainted); these two DOs were ordered under CLIN "0001" (NSN - 5802, green) notwithstanding the color discrepancy. Both DOs had a delivery date of 29 March 2010, later corrected to 31 August 2010, 120 days from receipt of order. (R4, tabs 53-56)

11. On 5 August 2010, the CO issued unilateral DO 2 Modification No. 000203 extending the delivery date for 100 tan painted JMICs from 31 August 2010 to 15 October 2010, and unilateral DO 3 Modification No. 000302 extending the delivery date for 300 unpainted JMICs from 31 August 2010 to 30 September 2010 and for the 100 balance of unpainted JMICs from 31 August 2010 to 15 October 2010 (R4, tabs 73-74).

12. Effective 23 November 2010, bilateral DO 2 Modification No. 000204 extended the delivery date for 100 tan JMICs to 15 March 2011, and bilateral DO 3 Modification No. 000303 extended the delivery date for 400 unpainted JMICs to 8 March 2011 (R4, tabs 84-86). These modifications clarified the foregoing discrepancies between CLIN and NSN numbers (*see* SOF ¶ 10) on the DOs and provided:

> IN CONSIDERATION OF THIS REVISED DELIVERY
> SCHEDULE, CONTRACTOR HEREBY
> UNCONDITIONALLY RELEASES AND WAIVES ALL
> CLAIMS AGAINST THE GOVERNMENT BY REASON

4

OF DELAYS ATTRIBUTABLE TO EXCUSABLE
CAUSES WHICH HAVE OR MAY HAVE OCCURRED IN
THIS CONTRACT AND FOR ALL OTHER CAUSES,
CONDITIONS AND HAPPENINGS WHICH HAVE
OCCURRED UNDER THIS CONTRACT TO DATE.

(R4, tab 84 at 2)

13. DayDanyon stated in response to government interrogatories that due to exceptional weather events on 15-16 December 2010, 25-26 December 2010 and 9-10 January 2011, "DayDanyon was closed and directly lost five days of production." We take judicial notice that DayDanyon's plant is located in Hart County, Georgia. The accompanying National Weather Service reports showed neither the historic normal weather nor any unusually severe weather for Hart County on such dates. DayDanyon also stated that—

> [D]elays in delivering of JMICS were partially caused by the inability of two suppliers/subcontractors to guarantee delivery dates of certain automated production set-ups by mid-January 2011 for early February 2011 delivery. This resulted in DayDanyon having to develop alternative methods and processes utilizing components it had available in-house or were readily available off the shelf, over the course of late January and through February 2011.
>
> ....
>
> These actions/inactions occurred [during] the latter part of December, 2010 until mid-January, 2011.

(App. supp. R4, tab 46 at 5-21, 23, 25)

14. After several DCMA visits to DayDanyon's facility and DayDanyon reports of deliveries of contract materials, on 22 February 2011, the CO sent DayDanyon a cure notice stating that contract performance was endangered by lack of progress, noting the impending DO 2 and DO 3 delivery dates and giving DayDanyon 10 days to cure such conditions (R4, tab 106 at 2-3).

15. On 2 March 2011, DayDanyon told the CO that, "we can begin shipments soon" (R4, tab 110), "a major portion of the performance has been completed, and the remainder will be finished shortly" (R4, tab 111), and on 4 March 2011 stated that "[t]he first three shipments of JMICs, comprised of 100 – 200 units per shipment, have been

loaded into the DCMA SIR System. These will occur beginning later this month." (R4, tab 112)

16. From 11 March 2011 to 15 April 2011, DayDanyon and DLATS had several email exchanges regarding: (a) CO's status of progress inquiries and DayDanyon replies that JMICs components were arriving and side and access panel sheets were being assembled on 16 March 2011 (R4, tabs 117, 123-24; app. supp. R4, tabs 9-12); (b) DayDanyon's order of "[seven] custom designed...process stations for high production of JMICs" (R4, tab 114) of which two stations were received and operating on about 22-23 March 2011 (R4, tabs 119-20); (c) DCMA's 28 March 2011 email to DayDanyon inquiring whether DLA had indicated if it would extend the contract performance period, and advising of a new QAR, Mr. Robert Strain (app. supp. R4, tab 10) and (d) DayDanyon's JMIC shipment projections for 30 March 2011, 14 April 2011 and 22 April 2011 (app. supp. R4, tab 16). DayDanyon did not receive all the JMIC parts before the 8 and 15 March 2011 delivery dates (R4, tabs 114-15). DayDanyon began JMIC assembly on 22 March 2011, but did not tender any JMICs for inspection by DCMA, and delivered no JMICs to DLATS (R4, tabs 120, 125 at 5).

17. DayDanyon sent to the CO a $720,700 claim, dated and certified on 6 April 2011, alleging that DLATS had failed to place delivery orders for an additional 500 JMICs by 24 December 2010, which the contract required (R4, tab 121 at 2-3).

18. CO Joseph J. McHenry's 8 April 2011 letter responding to DayDanyon's 6 April 2011 claim stated that "the two year base period for [the contract] expires on April 23rd, 2011. Therefore, your claim is premature. If you wish, you may file your claim after the base period has expired." (R4, tab 122 at 2) On 27 April 2011, DayDanyon appealed from that letter on the basis of a deemed denial, which the Board docketed as ASBCA No. 57611.

19. On 20 April 2011, CO McHenry issued: (a) unilateral contract Modification No. P0004 which terminated the contract for default and advised DayDanyon of its appeal rights (R4, tab 125); and (b) unilateral Modification Nos. 000205 and 000304 terminating DOs 2 and 3 for default (R4, tab 126). On 11 July 2011, DayDanyon appealed from these decisions, which was docketed as ASBCA No. 57681.

20. DayDanyon sent CO McHenry a $720,700 claim, dated and certified on 18 May 2011, which aside from that date, was materially identical with its 6 April 2011 claim (R4, tab 127).

21. CO Mark L. Scott's 15 July 2011 decision denied DayDanyon's 18 May 2011 claim in its entirety and advised DayDanyon of its appeal rights (R4, tab 128). DayDanyon appealed from that decision on 29 July 2011, which was docketed as ASBCA No. 57717.

6

## DECISION

Preliminarily, the government has not questioned the sufficiency under the CDA of DayDanyon's 6 April 2011 certified claim or the validity of the Board's CDA jurisdiction over ASBCA No. 57611 on a deemed denial basis, nor does the Board. DayDanyon's 6 April 2011 and 18 May 2011 claims are materially identical and differ only as to their dates (SOF ¶ 20). Accordingly, we dismiss ASBCA No. 57717 as duplicative of ASBCA No. 57611.

A tribunal shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment properly may be granted to a party when the non-moving party fails to offer evidence on an element essential to its case and on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Liberty Lobby*, 477 U.S. at 247. The government moves for summary judgment on the default termination, ASBCA No. 57681. The parties cross-move for summary judgment on DayDanyon's breach claim in ASBCA No. 57611.

These appeals present the following issues: (1) in ASBCA No. 57681, whether DLATS properly terminated the contract for default due to DayDanyon's failures to remedy the conditions endangering contract performance and to deliver 500 JMICs pursuant to the last extended delivery dates; (2) in ASBCA No. 57611, whether DLATS breached the contract by not ordering the 1000 guaranteed minimum JMICs (SOF ¶ 3) by 24 December 2010, as DayDanyon claims.

## I. Default

Our SOF extracted the material facts proposed in the government's motion and added some facts proposed by appellant in SOF ¶¶ 5, 13, 15 and 16. Neither party has raised any genuine issue of material fact with respect to such facts (*see* gov't resp. at 2-6; app. opp'n at 2-10).

The government has the burden of proof that its default termination was justified. *See Nuclear Research Corp. v. United States*, 814 F.2d 647, 650 (Fed. Cir. 1987). A contractor's failure to make timely delivery of agreed-upon goods establishes a prima facie case of default. *Id.* The burden then shifts to the contractor to show that the failure to deliver the contract goods was excusable. *See DCX, Inc. v. Perry*, 79 F.3d 132, 134 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 992 (1996).

7

The last extended delivery dates were 8 March 2011 for 400 unpainted JMICs under DO 3 and 15 March 2011 for 100 tan JMICs under DO 2 (SOF ¶ 12). By 15 March 2011 DayDanyon had delivered no JMICs to DLATS (SOF ¶ 16). Thus, the government prima facie has established that DayDanyon was in default for failure to deliver the supplies by those March 2011 dates under paragraph (a)(1)(i) of the contract's FAR 52.249-8, Default clause.

DayDanyon argues that DLATS was required to extend the delivery dates by five days due to "exceptional weather events" on 15-16 December 2010, 25-26 December 2010 and 9-10 January 2011 (app. opp'n at 11; SOF ¶ 13). The record contains evidence of neither the historic normal weather nor any unusually severe weather for Hart County on such dates (SOF ¶ 13). Thus, the record contains no proof of "unusually severe weather" under paragraph (c)(9) of the contract's FAR 52.249-8, Default clause. *See All-State Construction, Inc.*, ASBCA No. 50513 *et al.*, 04-2 BCA ¶ 32,778 at 162,082-84 (number of days of excusable weather delay determined by comparing experienced rain and snowfall to "historic normal" rain and snowfalls). Even if, *arguendo*, Hart County experienced "unusually severe weather" on those dates, that five-day delay would not excuse DayDanyon's failure to deliver timely.

It remains to analyze DayDanyon's argument that by delaying its termination to 20 April 2011 with "full knowledge that the Contractor was continuing production and progress," the government waived the contractor's default for failure to deliver 400 unpainted JMICs by 8 March 2011 and 100 tan JMICs by 15 March 2011 (app. opp'n at 11). To prove waiver of default, a contractor must show: (1) failure to terminate within a reasonable time after default under circumstances indicating forbearance; and (2) reliance by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent. *DeVito v. United States*, 413 F.2d 1147, 1153-54 (Ct. Cl. 1969) (CO waived delivery date when he knew that the contractor, during the month after the due date passed, made four deliveries, and the government accepted 420 of 1,000 units, which activities constituted substantial reliance on the CO's failure to terminate).

We focus on whether, after the DO2 and DO3 delivery dates had passed, the CO's and DCMA's inquiries about DayDanyon's production status, DCMA's identification of a new QAR at DayDanyon[1] and DayDanyon's projection of JMIC deliveries on

---

[1] DayDanyon asserts that DCMA's Mr. Oppedisano's reports and photos on the status of DayDanyon's JMIC materials and assembly showed "bad faith" because they conflict with Mr. Jankowski's views on that status (app. reply br. at 7-10). Those views do not meet the "clear and convincing proof" of a specific intent to injure the contractor criterion to overcome the strong presumption of good faith actions of a government official. *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002).

30 March, 14 April and 22 April 2011 (SOF ¶ 16), amounted to the CO's implied consent to its continued performance after default. Board decisions do not provide clear guidance with respect to our fact pattern. *E.g., DCX-CHOL Enterprises, Inc.*, ASBCA No. 54707, 08-2 BCA ¶ 33,389 at 167,730 (after contractor defaulted, even though the government knew that the contractor was continuing performance and accepted 32 of 278 delinquent items, the 84 to 176-day period from default to notice of termination was not unreasonable; appeal denied); *cf. ACR Machine, Inc.*, ASBCA No. 54734, 06-2 BCA ¶ 33,383 at 165,504 (post-default, a government industrial specialist, unbeknownst to the CO, asked the contractor for a new realistic delivery schedule; government motion for summary judgment denied). Mindful that the evidence of the non-moving party on the waiver issue (here, DayDanyon) is to be believed, and all justifiable inferences are to be drawn in its favor, *Liberty Lobby*, 477 U.S. at 247, we hold that the present appeal record is insufficiently developed to grant respondent's motion on ASBCA No. 57681.

## II. Breach

As stated above, neither party has raised any issue of genuine material fact. We turn to the issue of whether DayDanyon or the government is entitled as a matter of law to judgment on its breach of contract claim. DayDanyon claims that DLATS failed to place delivery orders by 24 December 2010 for 500 additional JMICs (SOF ¶ 17; app. mot. at 12-13) and thus breached the contract.

The FAR 52.216-18 Ordering and 52.216-22 Indefinite Quantity clauses have different purposes. The FAR 52.216-18 clause defines the period for ordering supplies as the "DATE OF CONTRACT AWARD...THROUGH: TWO (2) YEARS" (SOF ¶ 5(a)). FAR 52.216-22(d) provides:

> (d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided*, that the Contractor shall not be required to make any deliveries under this contract after *Two Years*. [Bold added]

(SOF ¶ 5(b))

DayDanyon interprets the FAR 52.216-18 period for issuing orders under this contract "FROM: DATE OF CONTRACT AWARD THROUGH: TWO (2) YEARS" (SOF ¶ 5(a)) as the same "Two Years" specified in the proviso of FAR 52.216-22(d), and concludes that DLATS had to order an additional 500 JMICs by "24 December 2010"

9

(contract award date plus 2 years less 120 days for delivery) (app. mot. at 12-13) in order for the government to obtain delivery within 2 years of contract award, or by 23 April 2011. DayDanyon's interpretation reduces the effective period for ordering from the specified "TWO (2) YEARS" to 20 months, and renders meaningless or superfluous the provisions of FAR 52.216-22(d), first, that orders issued within the effective period of the contract but not completed within the effective period of ordering are to be completed within the time specified by the order and second, the contract governs the parties' rights and duties under orders not so completed to the same extent as if the orders were completed during the contract's effective period. DayDanyon's interpretation violates the contract interpretation rules to harmonize and give reasonable meaning to all parts of a contract and to render no provision useless, meaningless, inoperative or superfluous. *See Precision Dynamics, Inc.*, ASBCA No. 50519, 05-2 BCA ¶ 33,071 at 163,922. We hold that DayDanyon's interpretation is unreasonable. We therefore must deny appellant's motion for summary judgment. Since the government did not breach the contract by failing to order an additional 500 units by 24 December 2010,[2] we grant the government's motion for summary judgment.

If we were to assume, *arguendo*, that the term "two years" appearing in the FAR 52.216-18 Ordering clause and in ¶ (d) of the FAR 52.216-22 Indefinite Quantity clause was inconsistent or ambiguous, such ambiguity was patent. DayDanyon did not seek clarification before contract award (SOF ¶ 5), so such arguable ambiguity is resolved against the contractor. *See Triax Pacific, Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997).

## CONCLUSION

We grant the government's motion for summary judgment in ASBCA No. 57611, deny appellant's motion for summary judgment in ASBCA No. 57611 and deny that appeal. We deny government's motion for summary judgment in ASBCA No. 57681. We dismiss ASBCA No. 57717 as duplicative.

Dated: 22 January 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[2] Once the contract was terminated by the government, the government had no further duty to order additional units.

10

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

JACK DELMAN
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA Nos. 57611, 57681, 57717,
Appeals of DayDanyon Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11